E. H. HARRIS, LOMER DAVENPORT, RAMONA DAVENPORT, C. W. HARRIS, ELIZABETH HARRIS, AND HARLIN PATRICK v. THE BOARD OF COMMISSIONERS OF WASHINGTON COUNTY AND THE INDIVIDUAL MEMBERS THEREOF, NAMELY, W. R. OWENS, P. B. BROWN, H. W. PRITCHETT, J. C. HASSELL, W. W. WHITE, AND RALPH HUNTER, TAX COLLECTOR OF WASHINGTON COUNTY

No. 27

(Filed 9 October 1968)

1. **Schools § 7; Taxation §§ 6, 36— tax levy by county commissioners — necessity for vote of the people — injunction**

    In an action to restrain the board of county commissioners from levying an increase in the county property tax to supplement teachers' salaries without approval of the county electorate, findings supported by the evidence that the amount budgeted to supplement teachers' salaries was to be paid from funds wholly derived from fines, penalties, forfeitures and Alcoholic Beverage Control funds constitute sufficient ground for denying plaintiffs' application for a temporary restraining order pending a final hearing on the merits, Article VII, § 6, Constitution of North Carolina not applying if no funds derived from taxation would be used to supplement the teachers' salaries.

2. **Counties § 1— nature and powers of a county**

    Counties are creatures of the General Assembly and constituent parts of the State government and possess only such powers and delegated authority as the General Assembly may confer upon them.

3. **Counties § 1— governmental functions — State agency**

    In the exercise of governmental functions, counties are agencies of the State and are subject to almost unlimited legislative control within constitutional limitations.

4. **Counties § 3; Schools § 7; Taxation §§ 3, 6— levy of tax to supplement teachers' salaries — necessity for vote — G.S. 115-80(a)**

    G.S. 115-80(a), as amended by Ch. 1263, Session Laws of 1967, authorizes a board of county commissioners to levy a tax on property to supplement teachers' salaries without approval of the electorate.

5. **Pleadings § 29— judgment on demurrer**

    When a demurrer is sustained, the action will be dismissed only if the allegations of the complaint affirmatively disclose a defective cause of action.

6. **Appeal and Error §§ 1, 3— appeal of right from Court of Appeals to Supreme Court — substantial constitutional question**

    Appellant's contention that action of the board of county commissioners in levying an additional property tax for supplementing teachers' salaries without a vote of the people as authorized by G.S. 115-80(a) violates Article VII, § 6 of the North Carolina Constitution presents a substantial constitutional question which authorizes an appeal of right from the Court of Appeals to the Supreme Court.

**7. Schools § 1— duty of legislature to provide for public schools**

The mandate of Article IX, § 2, requiring the General Assembly to provide by taxation or otherwise for a general and uniform system of public schools contemplates a system of public schools sufficient to meet, within the bounds of available sources, the educational needs of the people of the State.

**8. Counties §§ 2, 3; Schools § 7; Taxation §§ 3, 6— tax levy for supplementing teachers' salaries — county acts as State agency**

In levying an additional tax for the purpose of supplementing teachers' salaries under the authority conferred by G.S. 115-80(a), the county, through its Board of Commissioners and its Board of Education, acts in its capacity as an integral part of the State school system and as an administrative agency of the State.

**9. Schools §§ 1, 7; Taxation § 6— constitutionality of G.S. 115-80(a)**

The provision of G.S. 115-80(a) authorizing county commissioners to levy an additional property tax for supplementing salaries of school personnel without a vote of the people *is held* a valid exercise of the authority of the General Assembly to provide adequately for the schools throughout the State in compliance with the mandate of Article IX, § 2, of the Constitution of North Carolina, the limitations on taxation contained in Article VII, § 6, not being applicable to counties when acting as agencies of the State in carrying out the mandate of Article IX, § 2.

APPEAL by plaintiffs under G.S. 7A-30(1) from the decision of the Court of Appeals (1 N.C.App. 258, 161 S.E. 2d 213) upon cross appeals by plaintiffs and defendants from an order of *Peel, J.*, entered November 16, 1967, in the Superior Court of WASHINGTON County.

Action by plaintiffs-taxpayers for injunctive relief.

The cause was heard by Judge Peel (1) on the application in plaintiffs' amended complaint for a temporary restraining order; (2) on defendants' demurrer to the amended complaint; and (3) on defendants' motion to strike designated portions of the amended complaint.

Pertinent to their application for a temporary restraining order, plaintiffs offered affidavits, including the verified complaint; and defendants offered affidavits and exhibits, including original and revised budgets for 1967-1968 and excerpts from minutes of meetings of the Board of Commissioners of Washington County.

Judge Peel's order, after setting forth his findings of fact and conclusions of law, (1) denied plaintiffs' application for a temporary restraining order "pending the final hearing of this matter on its merits"; (2) overruled defendants' demurrer; (3) denied defendants' motion to strike; and (4) allowed defendants thirty days in which

to file answer. Plaintiffs and defendants appealed to the Court of Appeals from the portions adverse to them.

The portion of Judge Peel's order denying plaintiffs' application for a temporary restraining order, which was challenged by plaintiffs' appeal, was affirmed. The portions of Judge Peel's order, challenged by defendants' appeal, were reversed; and, in respect thereof, it was held that defendants' demurrer should have been sustained and the action dismissed.

In their notice of appeal, plaintiffs specified, in accordance with Rule 3 (as amended April 30, 1968) of the Supplementary Rules of this Court, that the substantial constitutional question directly involved was whether the action of the Board of Commissioners plaintiffs seek to restrain is in violation of Article VII, Sec. 6, of the Constitution of North Carolina.

*Wilkinson & Vosburgh for plaintiff appellants.*

*Norman, Rodman & Hutchins and Bailey & Bailey for defendant appellees.*

*Attorney General Bruton and Deputy Attorney General Moody for the State, amicus curiæ.*

BOBBITT, J.

The amended complaint is set out in full in the preliminary statement of the Court of Appeals. In brief summary, plaintiffs alleged that the Board of Commissioners of Washington County, in the county tax levy for 1967-1968, had voted an increase from $1.70 to $1.85 per $100.00 valuation; that the increase of 15¢ per $100.00 was to supplement the salaries of teachers in the public schools of the county; and that a tax levy for this purpose had not been approved by the electorate of Washington County. Asserting the Board of Commissioners lacked both statutory and constitutional authority for such levy, plaintiffs prayed that the court restrain the levy and collection of this increase in the county property tax.

Article VII, Sec. 6, of our Constitution, which, prior to renumbering as provided by the constitutional amendment (Session Laws 1961, c. 313, s. 5) adopted at the general election held November 6, 1962, was Article VII, Sec. 7, provides: "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose."

.

[1] Judge Peel found as facts, in substance, that the $21,750.00 in the 1967-1968 current expense budget to supplement teachers' salaries was to be paid from funds "wholly derived from fines, penalties, and forfeitures, and from Alcoholic Beverage Control funds"; that $34,000.00 would be available from these sources, of which $21,750.00 had been earmarked for use in the payment of such supplement; and that "there are no other stipulated uses of these two non-tax funds in said county budget or school budget." (Note: Funds derived from fines, penalties and forfeitures belong to the county school fund by virtue of Article IX, Sec. 5, of our Constitution.)

Article VII, Sec. 6, is not apposite if, as set forth in Judge Peel's said findings, no funds derived from taxation would be used to pay the supplement ($21,750.00) to teachers' salaries. These findings, which are amply supported by evidence, constituted sufficient ground for the denial of plaintiffs' application for a temporary restraining order "pending the final hearing of this matter on its merits." Although Judge Peel based his decision in part on this ground, the decision of the Court of Appeals is based solely on its holding that the demurrer to the amended complaint should have been sustained and the action dismissed.

It is unnecessary, in view of the ground of decision by the Court of Appeals and by this Court, to set forth additional findings of fact made by Judge Peel. Suffice to say, in addition to a finding that the Board of Commissioners at a regular meeting held July 10, 1967, adopted a resolution providing "that the Board of Education had shown necessity and peculiar local conditions to necessitate a supplement to the current expense fund," Judge Peel found that, in fact, "there was necessity and peculiar local conditions such as to warrant a supplement to said current expense fund."

[2, 3] Counties are creatures of the General Assembly and constituent parts of the State government. *DeLoatch v. Beamon,* 252 N.C. 754, 757, 114 S.E. 2d 711, 714, and cases cited. "(T)hey possess only such powers and delegated authority as the General Assembly may deem fit to confer upon them." *Surplus Co. v. Pleasants, Sheriff,* 264 N.C. 650, 654, 142 S.E. 2d 697, 701, and cases cited. "In the exercise of ordinary governmental functions, they are simply agencies of the State, constituted for the convenience of local administration in certain portions of the State's territory, and in the exercise of such functions they are subject to almost unlimited legislative control, except where this power is restricted by constitutional provision." *Jones v. Commissioners,* 137 N.C. 579, 596, 50 S.E. 291, 297. Accord: *Ramsey v. Comrs. of Cleveland,* 246 N.C. 647, 651, 100 S.E. 2d 55,

57, and cases cited. "(T)he powers and functions of a county bear reference to the general policy of the State, and are in fact an integral portion of the general administration of State policy." *O'Berry, State Treasurer, v. Mecklenburg County,* 198 N.C. 357, 360, 151 S.E. 880, 882, and cases cited; *Martin v. Comrs. of Wake,* 208 N.C. 354, 365, 180 S.E. 777, 783. Hence, we consider first whether there was sufficient *statutory* authority for the challenged action of the Board of Commissioners.

[4]    Prior to the effective date (July 6, 1967) of Chapter 1263, Session Laws of 1967, the last paragraph of G.S. 115-80(a), relating to County-Wide Current Expense Fund Budget, read as follows: "When necessity is shown by county or city boards of education, or peculiar local conditions demand, for adding or supplementing items of expenditure not in the current expense fund provided by the State, the board of county commissioners may approve or disapprove, in part or in whole, any such proposed and requested expenditure. For those items it approves, it shall make a sufficient tax levy to provide the funds: Provided, that nothing in this chapter shall prevent the use of federal or privately donated funds which may be made available for the operation of the public schools under such regulations as the State Board of Education may prescribe."

The amended complaint refers to other provisions of G.S. Chapter 115, namely, G.S. 115-116, G.S. 115-124, and G.S. 115-80(b). Plaintiffs allege, as a legal conclusion, that these statutes required approval by the electorate before the Board of Commissioners was authorized to levy a tax on property to supplement teachers' salaries. The gist of each of these statutory provisions is stated by Judge Brock in his opinion for the Court of Appeals. Suffice to say, any doubt as to the *statutory* authority of the Board of Commissioners to levy a tax on property to supplement the salaries of school teachers was dispelled by the enactment of the 1967 Act, which deleted the last paragraph of Subsection (a) of G.S. 115-80, quoted above, and substituted in lieu thereof the following: *"Notwithstanding any other provisions of this chapter,* when necessity is shown by the county and city boards of education, or peculiar local conditions demand, for adding or supplementing items of expenditure in the current expense fund, *including additional personnel and/or supplements to the salaries of personnel,* the board of county commissioners may approve or disapprove, in part or in whole, any such proposed and requested expenditure. *For those items it approves, the county commissioners shall make a sufficient tax levy to provide the funds:* Provided, that nothing in this chapter shall prevent the use of federal or privately donated funds which may be made available for the

operation of the public schools under such regulations as the State Board of Education may prescribe." (Our italics.)

[5]  When a demurrer is sustained, the action will be then dismissed only if the allegations of the complaint affirmatively disclose a defective cause of action, that is, that the plaintiff has no cause of action against the defendant. *Skipper v. Cheatham,* 249 N.C. 706, 711, 107 S.E. 2d 625, 629; *Parrish v. Brantley,* 256 N.C. 541, 543, 124 S.E. 2d 533, 535.

[6]  In our view, the only reasonable interpretation of plaintiffs' factual allegations is that the Board of Commissioners on July 10, 1967, adopted the 1967-1968 budget and the tax levy of $1.85 per $100.00 valuation after determining that the Board of Education had shown such necessity and peculiar local conditions as to necessitate the increased levy of 15¢ per $100.00 valuation to supplement the current expense fund, inclusive of teachers' salaries. It appearing therefrom that the Board of Commissioners acted in accordance with authority conferred by G.S. 115-80(a), as amended by said 1967 Act, plaintiffs' allegations disclose affirmatively they have no cause of action unless, as they assert, said 1967 Act is unconstitutional and therefore void because violative of said Article VII, Sec. 6, of our Constitution.

This is a substantial question arising under the Constitution of North Carolina and, with reference thereto, G.S. 7A-30(1) authorizes an appeal *of right* to this Court.

Provisions of Article IX of our Constitution pertinent to decision are quoted below.

"Section 1. Education shall be encouraged. — Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged.

"Sec. 2. General Assembly shall provide for schools; separation of the races. — The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years. (And the children of the white race and the children of the colored race shall be taught in separate public schools; but there shall be no discrimination in favor of, or to the prejudice of, either race.)

"Sec. 3. Counties to be divided into districts. — Each county of the State shall be divided into a convenient number of districts, in

which one or more public schools shall be maintained *at least six months* in every year; and if the commissioners of any county shall fail to comply with the aforesaid requirements of this section, they shall be liable to indictment." (Our italics.)

The *second* sentence in Article IX, Sec. 2, enclosed by parentheses, following the decision in *Brown v. Board of Education of Topeka,* 347 U.S. 483, 98 L. ed. 873, 74 S. Ct. 686, 38 A.L.R. 2d 1180, was held invalid in *Constantian v. Anson County,* 244 N.C. 221, 93 S.E. 2d 163, as violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

Article IX, Sec. 3, of the Constitution of 1868, was amended by the constitutional amendment (Public Laws of 1917, c. 192) adopted at the general election held November 5, 1918, by striking therefrom the words "four months" and inserting in lieu thereof the words "six months."

In 1923, the General Assembly enacted legislation providing generally for "(a) general and uniform system of public schools . . . throughout the State, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years," the length of term of each school "not (to) be less than six months." Public Laws of 1923, c. 136. The 1923 Act and amendments thereto required each county to provide support for its schools in compliance with the Article IX, Sec. 3, constitutional mandate; and budgets were required for Current Expenses, Capital Outlay and Debt Service. The General Assembly appropriated money to constitute "The State Equalizing Fund," which the Board of Education was authorized to apportion so that the burden of counties less able to make the required provisions would be to some extent equalized. *Board of Education v. Comrs. of Onslow,* 240 N.C. 118, 124, 81 S.E. 2d 256, 260. However, except for assistance, if any, from "The State Equalizing Fund," the support of schools in North Carolina was provided by each county or by a special school district acting under authority of a special act of the General Assembly. As noted by Clarkson, J., in *School District v. Alamance County,* 211 N.C. 213, 223, 189 S.E. 873, 880: "The duty imposed on the State, under Art. IX of the Constitution of North Carolina, is mandatory. This sacred duty was neglected by the State for long years, for various reasons, chiefly on account of the lack of means — the State having been crushed and impoverished by four years of war. In different parts of the State, as they became more prosperous, patriotic men and women obtained acts from the General Assembly by which schools

could be established for the education of the children of their communities. . . ."

Decisions of this Court, which considered a county's obligation under Article IX, Sec. 3, in relation to the tax limitation provisions of Article V, Section 1, of the Constitution of 1868, bear upon the constitutional question presently before us.

Article V, Section 1, of the Constitution of 1868, provided: "The General Assembly shall levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty years of age, which shall be equal on each, to the tax on property valued at three hundred dollars in cash. The commissioners of the several counties may exempt from capitation tax in special cases, on account of poverty and infirmity, and the State and county capitation tax combined shall never exceed two dollars on the head." (This provision of the Constitution of 1868 was stricken, and in lieu thereof the present Article V, Section 1, was adopted by amendment approved by the electorate on November 2, 1920, pursuant to Public Laws, Extra Session 1920, c. 93, s. 2.)

This Court held, under the tax equation and limitation prescribed by the above quoted provision of the Constitution of 1868, that the combined State and county tax could not exceed "two dollars on the head" or $66\frac{2}{3}$¢ on each $100.00 of property valuation. *R. R. v. Holden*, 63 N.C. 410 (1869); 18 N.C.L.R. 275 *et seq.*

Acting under authority of Laws of 1885, c. 174, s. 23, the Board of Commissioners of Sampson County, to provide for the support and maintenance of county schools for the term of four months prescribed by Article IX, Sec. 3, levied taxes which, combined with State taxes, aggregated $2.65 on the poll and $88\frac{1}{3}$¢ on each $100.00 of property valuation. It was held in *Barksdale v. Comrs. of Sampson County*, 93 N.C. 472, that the commissioners, in discharging their duty under Article IX, Sec. 3, could not disregard the tax limitations imposed by Article V, Section 1; and that the provisions of the Act of 1885, which purported to authorize the commissioners to exceed the limits prescribed by Article V, Section 1, were unconstitutional. The *Barksdale* decision was approved and followed in *Board of Education v. Commissioners (of Bladen County)*, 111 N.C. 578, 16 S.E. 621. Dissents of Merrimon, J. (later C.J.), in the *Barksdale* case, and of Avery, J., in the *Bladen County* case, foreshadowed the decision in *Collie v. Commissioners (of Franklin County)*, 145 N.C. 170, 59 S.E. 44, which, in express and positive terms, overruled the *Barksdale* and *Bladen County* decisions.

In *Collie*, Brown, J., referring to the *Barksdale* and *Bladen*

*County* decisions, said "We agree with the Court in those cases, that Article V is a limitation, generally, upon the taxing power of the General Assembly. Nor are we called upon to hold that the tax to supplement the school fund in each county, directed by the statute to be levied in case of need, may be 'upheld as a 'necessary county expense' or as a 'special tax' for a special purpose. It is unnecessary in the construction we give to the Constitution, to place our decision upon any such grounds. We hold . . . that, while this limitation upon the taxing power of the General Assembly prevails generally, *it does not always prevail, and that it should not be allowed to prevent the giving effect to another article of the same instrument equally peremptory and important.*" (Our italics.) In the opinion of Brown, J., for the Court, and in the concurring opinions of Walker, J., and Clark, C.J., in *Collie*, as well as in the dissenting opinions of Merrimon, J. (later C.J.), and Avery, J., in the earlier cases, the emphasis placed by the Constitution of 1868 upon education as prerequisite to an enlightened electorate, essential to democratic government, is set forth eloquently and convincingly. Reference was made to the fact that "(t)he only criminal offense created and defined by the Constitution itself" (Avery, J., 111 N.C. p. 585) is the failure of county commissioners to comply with the mandatory provisions of Article IX, Sec. 3.

The conclusion reached in *Collie* was that Article V, Section 1, placed no limitation upon the board of commissioners when acting to carry out the mandate of Article IX, Sec. 3, to support and maintain the schools of the county for the constitutional term of four (later six) months. The constitutionality of a 1901 statute, codified as Section 4112 of the Revisal of 1905, which contained substantially the same provisions as said 1885 Act, and the action of the board of commissioners in accordance therewith, were upheld.

In *Hollowell v. Borden*, 148 N.C. 255, 61 S.E. 638, Brown, J., referring to *Collie*, said: "(T)he opinion regards the public-school system as a State institution, founded in the Constitution and governed and controlled by the General Assembly. In order to reconcile clauses of the Constitution apparently conflicting, we held in that case that the provision for four months school terms was mandatory, and that in order to give effect to it the General Assembly could compel the counties of the State, when necessary, to disregard the limitation upon taxation contained in Article V, section 1."

In *Board of Education v. Commissioners (of Cherokee County)*, 150 N.C. 116, 121, 63 S.E. 724, 726, Hoke, J. (later C.J.), said: "(I)n *Collie v. Commissioners*, 145 N.C. 170, the Court held that the

duty of the county commissioners to provide by taxation for maintaining the public school for the minimum period of four months was not affected by the restrictions on the power of taxation contained in Articles V and VII of the Constitution; and from this it follows that the requirements of section 3, Article IX, to the extent indicated, are peremptory, and a failure on the part of the commissioners to perform the duty thereby imposed is or must be made an indictable offense."

[7]    In the cases cited above, the emphasis was on the mandate of Article IX, Sec. 3, to county commissioners, rather than on the mandate of Article IX, Sec. 2, requiring that the General Assembly "provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years." The authority and obligation of the General Assembly under Article IX, Sec. 2, are not restricted by references in Article IX, Sec. 3, to a school term of four (later six) months. The constitutional mandate to the General Assembly is to provide by taxation and otherwise for a general and uniform system of public schools. This mandate contemplates a system of public schools sufficient to meet, within the bounds of available resources, the educational needs of the people of the State.

In *Frazier v. Comrs. (of Guilford County)*, 194 N.C. 49, 62, 138 S.E. 433, 440, the question was whether the defendant, although acting in compliance with the County Finance Act (of 1927), had authority to issue bonds and notes of the county for the purpose of erecting and equipping schoolhouses, and purchasing land necessary for school purposes, and to levy taxes for the payment of said bonds and notes, without first obtaining the approval of the voters of the county. It was held that the limitations of Article VII, Sec. 7 (now Sec. 6) were not applicable to bonds and notes issued by a county, "as an administrative agency of the State, under authority conferred by the County Finance Act," for such purposes. Connor, J., for the Court, said: "The counties of the State are authorized by this statute to issue bonds and notes for the erection of schoolhouses and for the purchase of land necessary for school purposes, and to levy taxes for the payment of the same, principal and interest, not as municipal corporations, organized primarily for purposes of local government, but as administrative agencies of the State, employed by the General Assembly to discharge the duty imposed upon it by the Constitution to provide a State system of public schools." Accord: *Hall v. Commissioners of Duplin*, 194 N.C. 768, 140 S.E. 739; *Owens v. Wake*

*County,* 195 N.C. 132, 141 S.E. 546; *Julian v. Ward,* 198 N.C. 480, 152 S.E. 401; *Evans v. Mecklenburg County,* 205 N.C. 560, 172 S.E. 323; *Taylor v. Board of Education,* 206 N.C. 263, 173 S.E. 608.

In *Julian v. Ward, supra,* Clarkson, J., citing *Frazier* and prior cases, stated: "Under the mandatory provision in relation to the public school system of the State, the financing of the public school system of the State is in the discretion of the General Assembly by appropriate legislation either by State appropriation or through the county acting as an administrative agency of the State."

With reference to the authority of the General Assembly, when acting in obedience to and in compliance with the constitutional mandate, Article IX, Sec. 2, Connor, J., in *Frazier,* said: "The mandatory provision of section 3 of Article IX, to the effect that 'one or more public schools shall be maintained at least six months in every year' in each school district of the State, wherein tuition shall be free of charge to children of the State between the ages of six and twenty-one, is not a limitation as to the length of the school term; it is the minimum required by the Constitution. The General Assembly has the power to provide for a longer term for the public schools of the State. Whether the term shall exceed the minimum fixed by the Constitution must be determined from time to time by the General Assembly, in accordance with its judgment, and in response to the wishes of the people of the State."

The General Assembly, by the enactment of Chapter 562, Public Laws of 1933, adopted an entirely new policy with reference to the operation and support of the schools. The 1933 Act provided for a uniform system of State-supported operation of public schools for the entire State. *Board of Education v. Comrs. of Onslow, supra.* It repealed or subordinated all statutes relating to the public schools in conflict with its provisions. *Evans v. Mecklenburg County, supra.* It was provided, *inter alia,* "(t)hat the six months school term required by Article IX of the Constitution is hereby extended to embrace a total of one hundred and sixty days of school in order that there shall be operated in every county and district in the State which shall request the same a uniform term of eight months."

Section 17 of the 1933 Act, which was re-enacted in 1935 and in 1939, contained the following provision: "That the county board of education in any county administrative unit and the board of trustees in any city administrative unit, with the approval of the tax levying authorities in said county or city administrative unit and the State School Commission, in order to operate the schools of a higher standard than those provided for by State support, but in no

event to provide for a term of more than 180 days, may supplement any object or item of school expenditure: *Provided,* that before making any levy for supplementing State budget allotments an election shall be held in each administrative unit to determine whether there shall be levied a tax to provide said supplemental funds, and to determine the maximum rate which may be levied therefor." The quoted provisions were in force when *Bridges v. Charlotte,* 221 N.C. 472, 20 S.E. 2d 825, which considered the factual situation stated below, was decided.

The Charlotte City Administrative Unit had voted supplements to State support of the schools, fixed the maximum for that purpose at 25¢ on the $100.00 property valuation, and proceeded to conduct a nine months school term and to pay teachers' salaries therefor. In 1941, the General Assembly enacted the "Teachers' and State Employees' Retirement Act." Chapter 25, Public Laws of 1941, as amended by Chapter 143, Public Laws of 1941. This 1941 Act required county administrative units and city administrative units which supplemented the State support of the eight months school term to secure schools of higher standard or a longer term or both to contribute to the State Retirement Fund. No provision was made for submitting the question of local taxation to popular vote. The entire amount provided by the 25¢ levy was for purposes other than the payment of the required amount (approximately $17,124.75) to the State Retirement Fund. The precise question was whether the City of Charlotte had authority to provide this amount for payment to the State Retirement Fund by the levy of a tax without approval of the voters.

In *Bridges,* the constitutionality of said 1941 legislation was sustained; and, by reason of authority conferred by said 1941 legislation, this Court upheld the right of the City of Charlotte to levy a tax without a vote of the people to provide the amount necessary for its contribution to the State Retirement Fund on account of supplements to teachers' salaries and teachers' salaries for the extended school term. It was held that the Board of School Commissioners of the City of Charlotte, although formerly an agency of the municipality was, by reason of the 1933 Act, "a part of the Public School System and henceforth an agency of the State." This Court based its decision on the proposition that city and county administrative units "are, as the name implies, units within the public school system — established agencies of the State to carry on the then existing functions of the public school system, and logical and convenient agencies for investment with further power and duties as might be found expedient or necessary."

In *Bridges,* Seawell, J., for the Court, said: "The plea that the levy of such a tax by a county, without submission to popular vote, is prohibited by Article VII, section 7 (now 6), of the Constitution, as not being for a necessary expense was raised and settled in *Collie v. Commissioners,* 145 N.C. 170, 59 S.E. 44, by the declaration that the requirement that the public schools be maintained is a mandate of a coordinate article of the Constitution of equal dignity and force, and must be obeyed; and that Article VII, section 7 (now 6), had no relation by way of limitation on the taxing power exercised for that purpose." Other excerpts from the opinion in *Bridges* are quoted in Judge Brock's opinion for the Court of Appeals.

Presently, G.S. Chapter 115, Article 1, sets forth the "State Plan for Public Education." G.S. 115-1 provides: "General and uniform system of schools. — A general and uniform system of public schools shall be provided throughout the State, in accordance with the provisions of Article IX of the Constitution of North Carolina, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years, and to every person twenty-one years of age, or over, who has not completed a standard high school course of study. The minimum six months school term required by Article IX of the Constitution is hereby extended to embrace a total of one hundred and eighty days of school in order that there shall be operated in every county and city administrative unit a uniform school term of nine months without the levy of a State ad valorem tax therefor, and in order that substantial equality of education opportunity may be available to all children of the State."

[8]    Whether, under our present system, the board of commissioners of a county should be authorized, where necessity is shown by a county board of education, or peculiar local conditions demand, to add or supplement items of expenditure in the current expense fund, including additional personnel and/or supplements to the salaries of personnel, and to make a sufficient tax levy to provide the funds therefor, either with or without the approval of the voters of the county, is a matter for determination by the General Assembly. The General Assembly, by its enactment of Chapter 1263 of the Session Laws of 1967, quoted above, has conferred such authority on the Board of Commissioners of Washington County, without a vote of the people. In exercising the authority so conferred, Washington County, through its Board of Education and its Board of Commissioners, acted in its capacity as an integral part of the State school system and as an administrative agency of the State.

[9]    "In considering the constitutionality of a statute, every pre-

sumption is to be indulged in favor of its validity." Stacy, C.J., in *State v. Lueders*, 214 N.C. 558, 561, 200 S.E. 22, 24. In our view, this principle applies with full vigor when considering the authority of the General Assembly to provide adequately for the schools throughout the State in compliance with the mandate of Article IX, Sec. 2, of our Constitution. The conclusion reached is that G.S. 115-80(a), as amended by said 1967 Act, as interpreted herein, is a valid exercise of legislative authority, and that the challenge to its validity on the asserted ground it is violative of Article VII, Sec. 6, of our Constitution, is without merit.

For the reasons stated, the decision of the Court of Appeals, which sustained the demurrer to the amended complaint and dismissed the action, is affirmed.

Affirmed.