NORMAN MORGAN INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR JENNIFER ANN MORGAN; TRUMAN ARLANDER DAVIS, JR., INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR THAD WILLIAM DAVIS; JERRY EDWARDS PRICE INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR KIMBERLY RAE PRICE; WILLIAM CLAUDY PACK INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR ANGELA GAIL PACK; BENJAMIN L. LYNCH INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR BRANDON JAMES LYNCH, PETITIONERS v. THE POLK COUNTY BOARD OF EDUCATION, A BODY CORPORATE; ROY L. MORGAN, WILLIE ARLEDGE, FRED EARL FOSTER, PHYLLIS H. CRAIN, AND KENNETH WILLIAMS CONSTITUTING MEMBERS OF SAID POLK COUNTY BOARD OF EDUCATION; JAMES E. BENFIELD, SUPERINTENDENT OF POLK COUNTY PUBLIC SCHOOLS AND *EX OFFICIO* SECRETARY OF THE POLK COUNTY BOARD OF EDUCATION; AND ANNE CARSWELL, SCHOOL FINANCE OFFICER OF THE POLK COUNTY PUBLIC SCHOOLS, RESPONDENTS, AND THE STATE BOARD OF EDUCATION OF NORTH CAROLINA, RESPONDENT-INTERVENOR

No. 8429SC653

(Filed 16 April 1985)

1. Schools § 4.1— experimental extended school time program—statutory authority

    The State Board of Education and the Polk County Board of Education had the authority under G.S. 115C-112(11) and G.S. 115C-47(8) to conduct an experimental extended school day and school term program which varied the length of the school term in Polk County from the 180-day term mandated by G.S. 115C-84(c). Moreover, the General Assembly implicitly granted the State Board of Education and the local boards of education the authority to increase the length of the school term beyond 180 days by an act appropriating funds for the experimental extended day program.

2. Schools § 4.1— experimental extended school time program—no violation of uniformity requirements

    An experimental extended school day and school term program conducted in Polk County did not violate the requirement of a "uniform system of free public schools" in Art. IX, § 2(1) of the N. C. Constitution since the Constitution does not require a uniform 180-day term. Nor did such program violate the portion of G.S. 115C-84(c) providing for a "uniform school term of 180 days" since other provisions of the statute show that it does not require exact uniformity of terms.

**3. Schools § 4.1; Statutes § 4— constitutionality of statute—no standing to challenge**

Petitioners had no standing to challenge an experimental extended school day and school term program on the ground that it denied them equal protection of the laws since (1) they do not belong to a class prejudiced by the program in that, rather than being burdened, they have been blessed with the opportunity to receive more free education, and (2) there is no evidence that they are in immediate danger of being prosecuted under the Compulsory Attendance Act for failure to send their children to school for the extra 20 days required by the extended day and term program.

**4. Schools § 4.1— action against local school board—exclusion of evidence relating to State Board**

In an action to enjoin the operation of an experimental extended school day and school term program in Polk County, the trial court properly excluded evidence relating to a public hearing and a special meeting conducted by the State Board of Education where petitioners took a voluntary dismissal of their claims against the State Board, and where the Wake County Superior Court has exclusive jurisdiction over claims concerning procedures by the State Board. G.S. 115C-2; G.S. 150A-45.

**5. Evidence § 28.2; Statutes § 5.1— scope of legislative acts—minutes of legislative committee—authentication**

Minutes of a meeting of the Joint Appropriations Expansion Budget Committee on Education were admissible to show the meaning and scope of an appropriations act for an experimental extended school time program. Furthermore, the minutes were sufficiently authenticated when an administrative officer for the General Assembly and custodian of materials contained in the legislative library testified that the minutes were a true and accurate copy of the original minutes. G.S. 1A-1, Rule 44.

APPEAL by petitioners from *Davis, Judge.* Judgment entered 22 February 1984 in Superior Court, POLK County. Heard in the Court of Appeals 11 February 1985.

*Redmond, Stevens, Loftin & Currie, by Thomas R. West, for petitioner appellants.*

*McFarland, Key and McFarland, by Hugh L. Key, Jr., for respondent appellees Polk County Board of Education, et al.*

*Attorney General Rufus L. Edmisten, by Senior Deputy Attorney General Andrew A. Vanore, Jr., and Special Deputy Attorney General Edwin M. Speas, Jr., for respondent-intervenor appellee The State Board of Education of North Carolina.*

JOHNSON, Judge.

In the spring of 1983, the National Commission on Excellence in Education and the Task Force for Economic Growth submitted

Morgan v. Polk County Bd. of Education

reports to the United States Department of Education and the Education Commission of the States, respectively, in which they questioned the sufficiency of the existing education system to meet the demands of the future. As a result of these reports, it was recommended that all states consider increasing the length of the school day and school term.

On 2 June 1983, Dr. A. Craig Phillips, the Superintendent of Public Instruction of the State of North Carolina, presented the findings and recommendations of these organizations, in addition to a report prepared by his staff on the issue, to the North Carolina State Board of Education. Following Dr. Phillips' presentation, the State Board decided to study the feasibility of extending the length of the school day and year in North Carolina. The State Board directed Dr. Phillips to prepare a mailing to the 143 public school systems in North Carolina advising the systems that the State Board was seeking three school systems to volunteer to pilot an extended school day and extended school year program, that the State Board was going to request funds from the General Assembly to implement the program, that selection of the participating systems would be based upon a representative sample, and that implementation of the program was contingent upon the availability of funds.

On 7 June 1983, James Benfield, Superintendent of the Polk County Schools, received one of these letters. Mr. Benfield indicated his interest in participating in the program, which would involve a seven hour school day and a two hundred day school term for a three year period, by returning an attached form. After attending meetings conducted by the Chairman of the State Board and officials of the Department of Public Instruction, Mr. Benfield presented the proposal to the Polk County School Board at its meeting on 21 June 1983. The Polk County School Board voted to participate in the program.

On 6 July 1983, the State Board met and approved the requests of Polk County and Halifax County to participate in the program, contingent upon the appropriation of funds by the General Assembly. On 15 July 1983, the General Assembly appropriated funds for the "extended day program in the Department of Public Education." Section 92 of the Appropriations Act provided:

Of the reserve set up in Section 2 of this act for the extended day program in the Department of Public Education, a local

school administrative unit may be selected only with the approval of that local board of education, and only upon a finding of fact by the State Board of Education after a public hearing by the State Board of Education in that local school administrative unit that there is sufficient support among the populace of that administrative unit and that the establishment of the program will result in a meaningful test of the effectiveness of this experimental program. The members of the State Board of Education shall hold the hearing themselves and shall not delegate to a hearing officer the responsibility to do so.

1983 Sess. Laws, c. 761, s. 92. On 22 July 1983, the public hearing required by Section 92 was conducted in Polk County by the State Board of Education. A special meeting of the State Board was called on 25 July 1983 to consider the results of the public hearings in Halifax and Polk Counties. The State Board approved the requests of the two counties to participate in the program based upon findings that there was sufficient support among the populace of the administrative units and that the establishment of the program would result in a meaningful test of the effectiveness of the program.

On 11 August 1983, petitioners filed a petition for writ of mandamus and a motion for a temporary restraining order and preliminary injunction, seeking to enjoin the Polk County School Board from implementing and operating a school term in excess of 180 days. On 22 August 1983, the State Board of Education was allowed to intervene, whereupon petitioners amended their petition to allege that the State Board of Education did not follow proper procedures in implementing the program. The State and the County Boards of Education filed separate answers. Petitioners subsequently, on 12 January 1984, took a voluntary dismissal of their claims against the State Board of Education in their amended complaint. Following a hearing, the court denied the relief sought and dismissed the action.

I

[1]  The first issue we must decide is whether the State Board of Education and the Polk County Board of Education had the authority to vary the length of the school term from the 180 day term mandated by G.S. 115C-84(c).

The State Board of Education is provided for in the North Carolina Constitution. N.C. Const., Art. IX, sec. 4. It is given the

power by the Constitution to "supervise and administer the free public school system" and to "make all needed rules and regulations in relation thereto, subject to laws enacted by the General Assembly." N. C. Const. Art. IX, sec. 5. The State Board of Education therefore derives its powers from both the Constitution and the General Assembly. *See Guthrie v. Taylor*, 279 N.C. 703, 185 S.E. 2d 193 (1971), *cert. denied*, 406 U.S. 920, 32 L.Ed. 2d 119, 92 S.Ct. 1774 (1972). Among the powers granted by the General Assembly to the State Board is the power "to sponsor or conduct education research and special school projects considered important by the Board for improving the public schools of the State." G.S. 115C-12(11). Similarly, the General Assembly has authorized local boards of education "to sponsor or conduct educational research and special projects approved by the Department of Public Instruction and the State Board of Education that may improve the school system under their jurisdictions." G.S. 115C-47(8).

The extended school day and extended school year program is such an educational research project. The letters mailed to the school superintendents indicate that the program was an "experimental program" which was "designed to test the impact of an extension of the school day and school year." The reports submitted to the State Board indicate that an extended school day and school year could improve the educational system; however, there were many unanswered questions about the feasibility and effectiveness of an extended school day and school year. Moreover, the General Assembly implicitly granted the State Board of Education and the local boards of education the authority to increase the length of the school term beyond 180 days by enacting Section 92 of the Appropriations Act and by funding the project. The General Assembly has the authority to provide for a school term in excess of nine months. *Harris v. Board of Commissioners*, 274 N.C. 343, 163 S.E. 2d 387 (1968); *Frazier v. Board of Commissioners*, 194 N.C. 49, 138 S.E. 433 (1927). We therefore hold the trial court properly concluded the State Board of Education and the Polk County Board of Education have the legislative authority to conduct the program.

## II

[2] We next consider petitioners' contentions that the extended school day/year program violates the uniformity provisions of our

Constitution and G.S. 115C-84(c). Our Constitution provides: "The General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students." N. C. Const. Art. IX, sec. 2(1). Our Supreme Court has construed this uniformity requirement as follows:

> The term 'uniform' here clearly does not relate to 'schools,' requiring that each and every school in the same or other districts throughout the State shall be of the same fixed grade, regardless of the age or attainments of the pupils, but the term has reference to and qualifies the word 'system' and is sufficiently complied with where, by statute of authorized regulation of the public school authorities, provision is made for establishment of schools of like kind throughout all sections of the State and available to all of the school population of the territories contributing to their support.

*Board of Education v. Board of Commissioners*, 174 N.C. 469, 473, 93 S.E. 1001, 1002 (1917). Similarly, the word "uniform" modifies the word "system," not the word "term." The Constitution, therefore, does not require a uniform 180 day term. The extended school term program does not violate the Constitution's uniformity requirement, as the trial court properly concluded.

As noted earlier, the General Assembly has the authority to establish the length of the school term. Pursuant to this authority, it enacted G.S. 115C-84(c), which provides: "There shall be operated in every school in the State a uniform school term of 180 days for instructing pupils." G.S. 115C-84(c) goes on to provide, however, that "(f)or up to five of these days during the school year on which schools are closed due to hazardous weather conditions, natural disaster or other emergency, local boards of education may excuse teachers and students from attendance without requiring that the days be made up. . . ." It is thus apparent that G.S. 115C-84(c) does not require exact uniformity of terms. Some school districts may have terms of less than 180 days due to the weather, etc. The question of the constitutionality of that provision is not before us. As indicated *supra*, the Constitution does not require a uniform term of 180 days. Moreover, uniformity of school days is not required as G.S. 115C-84(a) permits the local

boards of education to determine the length of the school day in their respective districts. The reports prepared by the Staff of the Department of Public Instruction show that school days vary from six to seven hours per day.

[3]  Petitioners also contend that the operation of the extended school day/year program denies them equal protection of the law under the North Carolina Constitution and the United States Constitution. To challenge the constitutionality of a statute or a state action, the party challenging the action must be a member of the class prejudiced by the action. *In re Appeal of Martin*, 286 N.C. 66, 209 S.E. 2d 766 (1974). We do not think petitioners belonged to a class prejudiced by the action. Section 1 of Article IX of the North Carolina Constitution provides: "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools, libraries, and the means of education shall forever be encouraged." Section 2 of Article IX of the North Carolina Constitution provides that equal opportunities must be given to all students to attend public schools which are maintained at least nine months in every year. As evident from the Constitution, educational opportunities are highly valued in this State. Petitioners, rather than being burdened, have been blessed with the opportunity to receive more free education.

Petitioners, however, claim that a burden will be placed upon them as parents which will not be imposed on other parents because they will have to send their children to school 20 days longer or face criminal penalties under G.S. 115C-380 for violating G.S. 115C-378, which requires parents or guardians of children between the ages of seven and sixteen years to cause such children "to attend school continuously for a period equal to the time which the public school to which the child is assigned shall be in session." In order to challenge the constitutionality of a legislative or executive action, a party must be in immediate danger of sustaining a direct injury from the action. *Nicholson v. State Education Assistance Authority*, 275 N.C. 439, 168 S.E. 2d 401 (1969). There is no evidence that petitioners were in immediate danger of being prosecuted under the Compulsory Attendance Act. Petitioners therefore lack standing to raise this issue.

For the foregoing reasons, we hold the trial court properly concluded that there were no constitutional or statutory violations.

### III

[4] The next issue is whether the court properly excluded evidence relating to the public hearing and the State Board's special meeting. The excluded evidence related to the issues of whether the State Board properly conducted the public hearing and whether it properly implemented the program in Polk County. The State Board of Education was a necessary party to claims alleging irregularities in its conducting of the public hearing and in its proceedings because it was so vitally interested in the controversy involved in the claim that no valid judgment could be rendered without it as a party. See Booker v. Everhart, 294 N.C. 146, 240 S.E. 2d 360 (1978). A court cannot consider a claim without such a necessary party. Id. Petitioners, here, took a voluntary dismissal of their claims against the State Board of Education. Moreover, the Polk County Superior Court had no jurisdiction over the claims concerning the State Board's procedures, because exclusive jurisdiction over this contested case belonged to Wake County Superior Court. G.S. 115C-2; G.S. 150A-45. We hold the court properly excluded the evidence.

For the same reasons, we reject petitioners' contention that the court erred in denying their request for a jury trial on the issue of whether the State Board of Education followed proper procedures.

### IV

[5] Petitioners next contend that Section 92 was unambiguous in expressing an intent to fund only an extension of the length of the school day and not the school year; consequently, extrinsic evidence was improperly admitted to clarify the section. We disagree. When one reads Section 92, one asks, "What is the extended day program in the Department of Public Instruction?" It is not clearly stated on the face of Section 92. It thus becomes necessary to look at the section as a whole, the legislative history, and the circumstances surrounding its enactment to determine its meaning and scope. See Milk Commission v. Food Stores, Inc., 270 N.C. 323, 154 S.E. 2d 548 (1967). The court therefore properly admitted the minutes of the Joint Appropriations Expansion Budget Committee on Education meeting on 23 June 1983, which indicated that the program involved an extension of the school day by

one hour and of the school term by twenty days, to determine the scope of Section 92.

Petitioners also contend that these minutes were not properly admitted because they were not admitted into evidence through the legislative librarian. The minutes were introduced through Mr. George Hall, who testified that he was an administrative officer for the General Assembly and custodian of materials contained in the legislative library and that the minutes were a true and accurate copy of the original of the minutes. We hold this was sufficient authentication of the official minutes. *See* G.S. 1A-1, Rule 44; *Kearney v. Thomas*, 225 N.C. 156, 33 S.E. 2d 871 (1945); 2 Brandis on North Carolina Evidence sec. 194 (1982).

V

Petitioners' next contention is that the following finding of fact was not supported by any evidence:

> Recognizing that it would be illogical to spend large sums of money to extend the school calendar in all the school systems in the State without knowing the benefits which that action would produce, the State Board determined that it should proceed initially with an increase in time for learning on an experimental basis. Accordingly, the State Board solicited school systems to volunteer to extend the length of the school term and school day for a period of three years in order that data would be available upon which to make an informed judgment about whether the benefits flowing from extension of the school term would justify the substantial cost associated with an extension of the school calendar in all school systems.

Dr. A. Craig Phillips, the Secretary of the State Board of Education, testified that the Board decided to conduct this experiment on a limited voluntary basis rather than across the board statewide because it was "easier and better" to find out that way whether a longer school day and school year would be beneficial to students. If the experimental program proved successful, additional funding would be sought to implement a longer school day and year statewide. The minutes of the 2 June 1983 meeting of the State Board also indicate that funding was a key concern of the State Board. We hold the foregoing evidence was sufficient to support the finding of fact.

We last consider petitioners' contention that the court's conclusion of law that "the purposes of this experimental program were presented to the General Assembly in the context of widespread publicity about the quality of education and the need to increase the time provided children for learning" was not supported by the findings of fact. Though denominated a conclusion of law, it reads more like a finding of fact. We have reviewed the record and find that there is ample support in the record for this finding of fact.

For the foregoing reasons, we hold the trial court's findings of fact were supported by competent evidence which in turn support its conclusions of law and order. The order of the trial court is

Affirmed.

Chief Judge HEDRICK and Judge COZORT concur.