GERALD E. ARCHER, THOMAS S. CALLICUTT, LEIGH-ANN DODSON, JAMES HARPER, RONALD K. HARRIS, CHRISTIAN A. HICKS, THOMAS D. HOOKS, TAMARA LAWSON, MICHAEL E. THOMPSON, STEPHEN VAN AUSDALL, GALEN P. WARD, AND LISA WOOTEN-MARSHALL, Plaintiffs-Appellees v. ROCKINGHAM COUNTY, Defendant-Appellant

No. COA00-793

(Filed 3 July 2001)

**1. Immunity— sovereign—availability to counties—federal statute**

Defendant county is accorded the State's sovereign immunity as a general matter because the counties are recognizable units that collectively make up the State. The Fair Labor Standards Act was passed pursuant to Congress' Article I powers and is not a proper vehicle by which Congress can alter North Carolina's sovereign immunity; whether defendant county may assert sovereign immunity is a question of state law.

ARCHER v. ROCKINGHAM CTY.

[144 N.C. App. 550 (2001)]

## 2. Immunity— sovereign—employment action by county employees

Defendant County waived sovereign immunity by entering into an employment contract with plaintiff-EMTs even though the contract was implied and even though plaintiff alleged violations of the Fair Labor Standards Act (FLSA). Sovereign immunity is not a valid defense to suits arising from contract law and contracts may be express or implied. The statutory liquidated damages clause under the FLSA does not convert the contract action into a tort; liquidated damages can be found in a variety of everyday contracts.

Appeal by defendant from order entered 4 April 2000 by Judge Melzer A. Morgan, Jr., in Rockingham County Superior Court. Heard in the Court of Appeals 16 May 2001.

*Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett and Stern & Klepfer, L.L.P., by Ronda L. Lowe, for plaintiff appellees.*

*Womble Carlyle Sandridge & Rice, PLLC, by James R. Morgan, Jr., for defendant appellant.*

McCULLOUGH, Judge.

Plaintiffs are twelve former and current emergency medical technicians (EMTs) who work in Rockingham County, North Carolina. Sometime in the mid-1980s, the County began paying the full-time EMTs according to the "fluctuating workweek pay plan." This pay schedule is a recognized method of compensation under the federal Fair Labor and Standards Act of 1938 (FLSA) and is codified in 29 C.F.R. § 778.114 (2000). This compensation scheme assists employers in calculating an employee's regular and overtime pay rates and operates in situations where an employee works a different number of hours from week to week. The fluctuating workweek pay plan provided the Rockingham County EMTs with a base salary for the first forty hours they worked each week. When necessary, overtime hours (those in excess of forty hours) were compensated at a rate of at least one-half the base salary amount.

Shortly after implementation of the fluctuating workweek pay plan, Rockingham County Personnel Officer Ben Neal held meetings with the EMTs to explain the payment schedule to them and answer their questions. The Rockingham County Manager, Jerry Myers, also

met with the employees to go over the pay plan. The EMTs were paid every two weeks, and the pay stubs and deposit slips reflected a base salary, plus any amount due for overtime hours worked.

Plaintiffs filed a complaint on 18 December 1998, alleging that they were entitled to be paid a base salary and overtime pay at the rate of one and one-half times the regular rate of pay. They also alleged they were given compensatory time in lieu of overtime pay, but that the compensatory time was underpaid (less than one and one-half times their base salary). Plaintiffs also stated that defendant deprived them of an opportunity to choose between receiving overtime pay or compensatory time. Plaintiffs alleged damages in excess of $10,000.00; that figure was calculated based on the alleged underpayments, plaintiffs' request for liquidated damages under 29 U.S.C. § 216, attorney's fees, and costs.

The parties engaged in prolonged discovery for several months. Plaintiffs filed a motion for summary judgment on 8 September 1999, and defendant filed its own motion for summary judgment on 1 March 2000. Defendant also filed a Rule 12(b)(6) motion to dismiss for failure to state a claim on 15 February 2000. In an order entered 4 April 2000, the trial court denied the cross-motions for summary judgment and also denied defendant's motion to dismiss. Defendant appealed.

[1] Defendant County argues that the trial court should have granted its motion for summary judgment and its motion to dismiss because it is entitled to sovereign immunity, which shields it from plaintiffs' lawsuit. Defendant also argues that state law controls the outcome of the case, such that the County enjoys sovereign immunity in the plaintiffs' action for unpaid wages. While we agree that the County is entitled to the benefits of sovereign immunity as a general matter, we do not recognize it as a valid defense in this case because plaintiffs' claim for unpaid wages arises in contract, and the County has waived any immunity it had by entering into an implied employment contract with the EMTs.

Sovereign immunity "is firmly established in our law today, and by legislation has been recognized by the General Assembly as the public policy of the State." *Steelman v. City of New Bern*, 279 N.C. 589, 594, 184 S.E.2d 239, 242 (1971). In general, sovereign immunity operates to grant the state, its counties, and its public officials an unqualified and absolute immunity from suits brought against them in

ARCHER v. ROCKINGHAM CTY.

[144 N.C. App. 550 (2001)]

their official capacity. *Messick v. Catawba County*, 110 N.C. App. 707, 714, 431 S.E.2d 489, 493, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993). Defendant argues that it is entitled to sovereign immunity because it is "a subordinate division of the state[.]" *Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952). We agree.

"It is well established that the State is immune from suit under the doctrine of sovereign immunity, until and unless it consents to be sued." *Slade v. Vernon*, 110 N.C. App. 422, 426, 429 S.E.2d 744, 746 (1993). Defendant urges us to consider the County as an arm of the state so that it may receive the benefits of sovereign immunity. We agree that defendant County, along with ninety-nine other counties, make up the state and are, literally, the state itself. Our case law has long held the view that

[c]ounties are of and constitute a part of the State government. A chief purpose of them is to establish its political organization, and effectuate the local civil administration of its powers and authority. They are in their general nature governmental—mere instrumentalities of government—and possess corporate powers adapted to its purposes. It is not their purpose to create civil liability on their part, and become answerable to individuals civilly or otherwise. Indeed, they are not, in a strict legal sense, municipal corporations, like towns and cities organized under charters or particular statutes, and invested with more of the functions of corporate existence, intended to serve, not so much the purposes of the State, as, subject to its general laws, the advantage of particular communities in particular localities in the promotion and regulation more or less of trade, commerce, industries, and the business transactions and relations in some respects of the people residing or going there collectively and severally—their purposes are more general, and partake more largely of the purpose and powers of government proper.

*Manuel v. Comrs.*, 98 N.C. 9, 10-11, 3 S.E. 829, 829 (1887). Simply stated, "[c]ounties are creatures of the General Assembly and constituent parts of the State government." *Harris v. Board of Commissioners*, 274 N.C. 343, 346, 163 S.E.2d 387, 390 (1968). The word "constituent" means "serving to form, compose, or make up a unit or whole." *Webster's Third New International Dictionary* 486 (1971). The counties are recognizable units that collectively make up our state, and are thus entitled to sovereign immunity under North Carolina law.

ARCHER v. ROCKINGHAM CTY.

[144 N.C. App. 550 (2001)]

North Carolina has consistently exercised sovereign immunity in favor of its counties. *See White v. Commissioners*, 90 N.C. 437, 439-40 (1884) (stating that the counties' purpose is not to be civilly liable, since they are "political agencies and organizations intended to aid in the general administration of the state government"). Counties cannot be sued unless a particular statute grants a right of action against them. See *Prichard v. Commissioners*, 126 N.C. 908, 912, 36 S.E. 353, 355 (1900) (stating that counties are "instrumentalities of [state] government . . . and they are not liable for damages in the absence of statutory provisions giving a right of action against them").[1]

Plaintiffs correctly point out that the federal court system, as well as some other states, treat counties as something other than constituent parts of the state. Plaintiffs rely heavily on federal case law for the proposition that counties are lesser entities which do not enjoy sovereign immunity. However, we agree with defendant County's position that Congress cannot abrogate or waive the sovereign immunity of a state subdivision when it is being sued in a private suit for damages, as is the case here. *See* U.S. Const. art. I; and *Alden v. Maine*, 527 U.S. 706, 144 L. Ed. 2d 636 (1999).

Each state retains " 'a residuary and inviolable sovereignty' " that cannot be impugned by the federal government. *See Alden*, 527 U.S. at 715, 144 L. Ed. 2d at 653 (quoting The Federalist No. 39, at 245). Because the federal government cannot abrogate state sovereign immunity, this case is decided under state law, and plaintiffs' authority is not binding upon this Court. We hold that the determination of whether Rockingham County is entitled to the state's sovereign immunity is a question of state law. In that vein, we recognize that

the States have wide authority to set up their state and local governments as they wish. Understandably, then, the importance of

---

1. In addition to statutory provisions which grant a right of action against a county, a county may also choose to waive its sovereign immunity by purchasing liability insurance pursuant to N.C. Gen. Stat. § 153A-435(a) (1999). However, defendant maintains that it has not waived its sovereign immunity, and plaintiffs have alleged no such waiver. See *Hare v. Butler*, 99 N.C. App. 693, 394 S.E.2d 231, *disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990) (explaining the significance of a waiver of sovereign immunity). Defendant also presented the affidavit of Rockingham County Manager Jerry Myers, which clearly stated that the County had not purchased liability insurance for claims brought under the FLSA; "[i]n other words, the County has no insurance (as that term is used in G.S. § 153A-435) covering the claims brought by the plaintiffs in this lawsuit."

ARCHER v. ROCKINGHAM CTY.

[144 N.C. App. 550 (2001)]

counties and the nature of county government have varied historically from region to region, and from State to State.

*McMillian v. Monroe County, Alabama,* 520 U.S. 781, 795, 138 L. Ed. 2d 1, 13 (1997). Each state has the right to decide how to politically organize itself and may grant sovereign immunity to the constituent parts of its choosing. North Carolina has chosen to cloak its counties with the protection of sovereign immunity; we decline to take away Rockingham County's sovereign immunity based on the state's organizational decision. We therefore accord Rockingham County the state's sovereign immunity as a general matter.[2]

**[2]** Having determined that the County is entitled to claim the State's sovereign immunity as a general matter, we must now decide whether sovereign immunity is a valid defense in the present situation. This, in turn, depends on whether the plaintiffs' lawsuit arises in tort or contract. While sovereign immunity remains a viable defense in tort actions, it is not a valid defense in suits arising from contract law. "Our Supreme Court abolished sovereign immunity in contract actions in 1976." *Herring v. Winston-Salem/Forsyth County Bd. of Educ.,* 137 N.C. App. 680, 681 n.1, 529 S.E.2d 458, 460 n.1, *disc. review denied,* 352 N.C. 673, 545 S.E.2d 423 (2000). The *Herring* decision relied upon our Supreme Court's ruling in *Smith v. State,* 289 N.C. 303, 222 S.E.2d 412 (1976).

In *Smith,* a doctor sued the State for unpaid wages after he was discharged from his position as superintendent of a state mental hospital. *Id.* at 307, 222 S.E.2d at 416. The Court found that, because the doctor worked for the State, a valid contract " 'which [had] mutuality of obligation and remedy between the parties to it' " existed between the two. *Id.* at 316, 222 S.E.2d at 421 (quoting *George & Lynch, Inc. v. State,* 57 Del. 158, 162, 197 A.2d 734, 736 (1964)). Moreover, by entering into a valid contract, the Court found that the State had implicitly consented to being sued and sovereign immunity was not a valid defense. In reaching this decision, the Court noted that "[o]n the

2. Congress may alter a state's sovereign immunity in situations where Congress acts under a law passed via the Fourteenth Amendment, because the Fourteenth Amendment gives Congress power "to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5. Congress cannot alter a state's sovereign immunity by using a law passed under its Article I powers. *See Florida Prepaid v. College Sav.,* 527 U.S. 627, 635-36, 144 L. Ed. 2d 575, 585-86 (1999) and *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 72-73, 134 L. Ed. 2d 252, 276-77 (1996). As the FLSA was passed pursuant to Congress' Article I powers, it is not a proper vehicle by which Congress can alter North Carolina's sovereign immunity. Whether defendant County may assert the state's sovereign immunity is, therefore, a question of state law.

state level many courts have judicially abolished the doctrine of sovereign immunity as it applies to contract actions by holding that the state impliedly waives its sovereign immunity whenever it enters into a contract." *Id.* at 313, 222 S.E.2d at 419. The *Smith* Court went on to meticulously review decisions from thirteen sister states which abolished sovereign immunity in contract cases. *Id.* at 313-14, 222 S.E.2d at 419-20. The Court then explained

> [f]rom the foregoing cases we see that the courts which have held a state implicitly consents to be sued upon any valid contract into which it enters were moved by the following considerations: (1) To deny the party who has performed his obligation under a contract the right to sue the state when it defaults is to take his property without compensation and thus to deny him due process; (2) To hold that the state may arbitrarily avoid its obligation under a contract after having induced the other party to change his position or to expend time and money in the performance of his obligations, or in preparing to perform them, would be judicial sanction of the highest type of governmental tyranny; (3) To attribute to the General Assembly the intent to retain to the state the right, should expedience seem to make it desirable, to breach its obligation at the expense of its citizens imputes to that body "bad faith and shoddiness" foreign to a democratic government; (4) A citizen's petition to the legislature for relief from the state's breach of contract is an unsatisfactory and frequently a totally inadequate remedy for an injured party; and (5) The courts are a proper forum in which claims against the state may be presented and decided upon known principles.

We too are moved by the foregoing considerations. We hold, therefore, that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract. Thus, in this case, and in causes of action on contract arising after the filing date of this opinion, 2 March 1976, the doctrine of sovereign immunity will not be a defense to the State. The State will occupy the same position as any other litigant. . . .

* * * *

The legislature has already consented to be sued in many important contractual situations. For example, . . . G.S. § 153A-11 (1974) and G.S. § 160-11 (Supp. 1975) provide that counties and

ARCHER v. ROCKINGHAM CTY.

[144 N.C. App. 550 (2001)]

cities may contract and be contracted with and that they may sue and be sued. The General Assembly having consented to contract suits in these areas, we can perceive no sound reason why the doctrine of sovereign immunity should be a defense to any action for the breach of a duly authorized State contract.

*Id.* at 320-21, 222 S.E.2d at 423-24. See also *Hubbard v. County of Cumberland*, 143 N.C. App. 149, 544 S.E.2d 587 (2001) (applying *Smith* where law enforcement officers sued the County over a longevity pay plan, and concluding that sovereign immunity was not a defense in personnel actions, which were contractual in nature).

"[T]he existence of the relation of employer and employee . . . is essentially contractual in its nature, and is to be determined by the rules governing the establishment of contracts, express or implied." *Hollowell v. Department of Conservation and Development*, 206 N.C. 206, 208, 173 S.E. 603, 604 (1934). Guided by this principle, as well as the reasoning in *Smith*, we hold that the County may not assert the defense of sovereign immunity in this case, even though plaintiff alleges the county has violated the FLSA. We agree with plaintiffs' assertion that the employment arrangement between the County and plaintiffs was contractual in nature, although the contract was implied. Employment contracts may be express or implied. An implied contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding. *See* 3 Arthur L. Corbin, *Corbin on Contracts* § 564 (1964 & Supp. 2000) and *United States v. Maryland Casualty Co.*, 64 F.Supp. 522 (S.D.Cal. 1946). We do not limit *Smith* to written contracts; its reasoning is equally sound when applied to implied oral contracts.

The fact that there was a pay plan in place for employees such as the plaintiffs indicates that there was some agreement between them and the County, and an implied oral contract for services existed. The issue of whether or not the County's pay plan complies with the FLSA is not before us. Plaintiffs can challenge the pay plan on this basis because it is in the nature of a contractual obligation.

Defendant attempts to argue that plaintiffs' reference to 29 U.S.C. § 216, the statutory liquidated damages clause under which plaintiffs request recovery, makes the case a tort action rather than a contract action. We do not agree. The statutory liquidated damages clause is a contract provision that can be found in a variety of everyday con-

tracts. Its presence does not convert plaintiffs' contract action into a tort. See 5 Arthur L. Corbin, *Corbin on Contracts* § 1057 (1964 & Supp. 2000) (explaining that liquidated damages clauses which are reasonable in amount are enforceable as part of a contract and are not seen as penalty clauses).

Finally, we wish to make clear that we are not now concerned with the merits of plaintiffs' contract action. Whether the fluctuating workweek pay plan was properly followed by defendant and whether plaintiffs are ultimately entitled to relief are questions not properly before us. As the similarly situated *Smith* Court stated, "We have no knowledge, opinion, or notion as to what the true facts are. These must be established at the trial. Today we decide only that plaintiff[s] [are] not to be denied [their] day in court because [their] contract was with the State [subdivision]." *Smith*, 289 N.C. at 322, 222 S.E.2d at 424.

We therefore conclude that Rockingham County is generally entitled to the defense of sovereign immunity because it is a constituent part of the state. We further hold that the County waived the protection of sovereign immunity by entering into an employment contract with plaintiffs, such that plaintiffs have presented a proper cause of action. The trial court's dismissal of the cross motions for summary judgment and dismissal of defendant's motion to dismiss are

Affirmed.

Judges WALKER and THOMAS concur.