596 S.E.2d 867 (2004)
In the Matter of Q.V., dob 07/26/94.
No. COA03-738.
Court of Appeals of North Carolina.
June 15, 2004.
*868 Womble, Carlyle, Sandridge & Rice, P.L.L.C., by Mark A. Davis, Raleigh, for petitioner-appellee.
Katharine Chester, Siler City, for respondent-appellant father.
MARTIN, Chief Judge.
Respondent-father appeals from an order denying his motion for reimbursement of costs incurred to recover physical custody of his son, pursuant to G.S. § 50A-312, from the Orange County Department of Social Services ("DSS").
DSS assumed emergency non-secure custody of respondent's son, Q.V., on 1 February 2001, upon the admittance of Q.V.'s mother into the psychiatric unit of the North Carolina Memorial Hospital. On 5 February 2001, DSS filed a petition in the Orange County District Court alleging Q.V. was neglected and dependent. At a child planning conference held on 7 February 2001, Q.V. was adjudicated neglected and dependent in accordance with a stipulation by Q.V.'s mother and stepfather, and placement authority was vested with DSS. The matter was set to be reviewed on 19 April 2001. Respondent-father, a California resident, was not notified of these proceedings.
Subsequent to the adjudication, Q.V.'s mother was extradited to California to face charges for parole violations. In a letter dated 18 February 2001, Q.V.'s paternal grandmother informed the Orange County court that respondent-father was also incarcerated in California and requested that Q.V. be placed with her and Q.V.'s paternal grandfather in California where Q.V.'s sister also resided. On 3 April 2001, Q.V.'s paternal grandmother filed documents in the superior court of California, County of Sonoma, requesting that court to assert its jurisdiction over Q.V. and communicate with the North Carolina court regarding resolution of the temporary custody order.
Respondent-father was formally served with a summons and copy of the juvenile petition in this matter on 12 April 2001. On 13 April 2001, respondent-father filed an affidavit with the Orange County District Court stating that he was the natural father of Q.V. and that he had joint custody of Q.V. pursuant to a custody order entered in California on 7 July 2000 and attached to the affidavit. Respondent-father requested that the trial court place Q.V. with his mother, Q.V.'s paternal grandmother, until respondent-father was released from jail. The attached custody order indicated that respondent-father and Q.V.'s mother shared joint legal and physical custody of Q.V., with primary physical custody of Q.V. being with Q.V.'s mother. The custody order specifically stated that jurisdiction over the issue of Q.V.'s custody was to remain with the Sonoma County California Superior Court.
On 19 April 2001, a review hearing was held in the district court in Orange County. The court did not address the issue of jurisdiction, but ordered that Q.V.'s custody should remain with DSS pending the completion of home studies of Q.V.'s grandparents in California. There is no indication in the record that respondent-father was present or represented by counsel at this hearing.
At review hearings conducted on 21 June and 2 August 2001, the district court determined that it had both personal and subject matter jurisdiction over the matter and concluded that the best interests of Q.V. required that he continue with DSS placement in North Carolina. Again, respondent-father was neither present nor represented by counsel at these hearings.
On 3 December 2001, the Sonoma County California Superior Court ordered Q.V.'s mother and DSS to show cause as to why physical custody of Q.V. should not be placed with respondent-father and granted temporary physical custody of Q.V. to respondent-father. That same day, respondent-father, through counsel, filed a petition in Orange County for an expedited hearing to enforce the California child custody determination pursuant to G.S. § 50A-308, along with motions to dismiss and vacate Orange County District Court's previous orders due to lack of jurisdiction. The matter was heard on 6 December 2001, at which time the court declined respondent-father's request for an expedited *869 hearing to address the enforcement of the California custody order and set a hearing to address the issue of jurisdiction for 31 January 2002. Following an order issued by this Court, however, the district court entered an order on 10 January 2002 in which it denied respondent-father's motions to dismiss and vacate previous orders.
On 15 January 2002, the superior court of Sonoma County, California issued an order asserting exclusive, continuing jurisdiction over the custody determination of Q.V. On 20 March 2002, the Orange County District Court relinquished jurisdiction regarding Q.V.'s custody to the State of California. Respondent-father then filed a motion in the Orange County District Court seeking reimbursement, pursuant to N.C. Gen.Stat. § 50A-312, from DSS for expenses in excess of $40,000 allegedly incurred in recovering custody of Q.V. Respondent-father appeals from an order in which the district court determined that both DSS and the court had acted appropriately in the matter and in which the court denied respondent-father's motion for costs.
The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") provides a uniform set of jurisdictional rules and guidelines for the national enforcement of child custody orders. See N.C. Gen.Stat. §§ 50A-101 et seq. (Official Comment) (2003). N.C. Gen.Stat. § 50A-312 (2003) is located under Part 3 of the Act, which provides for enforcement.
Under the UCCJEA, a party wishing to enforce a child-custody determination of another state with jurisdiction must file a petition for enforcement with a court of the state in which the respondent is located. N.C. Gen.Stat. § 50A-308 (2003). The statute defines "petitioner" to mean "a person who seeks enforcement ... of a child-custody determination" and "respondent" to mean "a person against whom a proceeding has been commenced for enforcement ... of a child-custody determination." N.C. Gen.Stat. § 50A-301 (2003). The UCCJEA defines "person" to mean:
an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government; governmental subdivision, agency, or instrumentality; public corporation; or any other legal or commercial entity.
N.C. Gen.Stat. § 50A-102(12) (2003) (emphasis added). Thus, a state agency, such as a department of social services, may qualify as a petitioner or respondent in such an enforcement proceeding. See N.C. Gen.Stat. § 50A-102 (Official Comment) ("The term `person' has been added to ensure that the provisions of this Act apply when the State is the moving party in a custody proceeding or has legal custody of a child.").
Respondent-father's motion for reimbursement of fees and expenses incurred in enforcing the California custody order was made pursuant to N.C. Gen.Stat. § 50A-312 (2003). That statute provides:
(a) The court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorneys' fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.
(b) The court may not assess fees, costs, or expenses against a state unless authorized by law other than this Article.
Id.
Respondent-father asserts multiple violations of the UCCJEA, as well as his constitutional rights, by DSS and by the district court of Orange County, and argues that such violations were so egregious as to justify an award, pursuant to G.S. § 50A-312, of his costs and expenses incurred in the proceeding. He assigns multiple errors to the trial court's actions in this case, as well as to its failure to find that he was the prevailing party and that reimbursement is reasonable under the circumstances. While many of his contentions with respect to the apparently tortured course this proceeding followed in this State's trial court may arguably have merit, we do not consider them because even had they been found by the *870 trial court, they would not afford a basis for relief under G.S. § 50A-312.
G.S. § 50A-312(a) obligates a court to award fees, costs, and expenses to the prevailing party of a petition for enforcement of a child-custody determination pursuant to G.S. § 50A-308 "unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate." N.C. Gen.Stat. § 50A-312 (2003); see also N.C. Gen.Stat. §§ 50A-308 through 310 (2003). However, G.S. § 50A-312(b) specifically provides that fees, costs and expenses may not be awarded against a state unless authorized by some law other than the UCCJEA.
The UCCJEA defines the term "state" as follows:
"State" means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.
N.C. Gen.Stat. § 50A-102(15) (2003). The State of North Carolina is comprised of one hundred counties and those counties "make up the state and are, literally, the state itself." Archer v. Rockingham County, 144 N.C.App. 550, 553, 548 S.E.2d 788, 790 (2001), disc. review denied, 355 N.C. 210, 559 S.E.2d 796 (2002). While the laws of some other states, as well as federal courts, treat counties "as something other than constituent parts of the state[,]" id. at 554, 548 S.E.2d at 791, North Carolina law has long held otherwise:
Counties are creatures of the General Assembly and constituent parts of the State government.... In the exercise of ordinary governmental functions, they are simply agencies of the State, constituted for the convenience of local administration in certain portions of the State's territory.... The powers and functions of a county bear reference to the general policy of the State, and are in fact an integral portion of the general administration of State policy.
Harris v. Board of Commissioners, 274 N.C. 343, 346-47, 163 S.E.2d 387, 390 (1968) (internal quotations and citations omitted). Thus, when interpreting the General Statutes of North Carolina, it is presumed that any reference to the State implicitly includes all its constituent parts, unless otherwise indicated in the statute or case law. See Archer, 144 N.C.App. at 553, 548 S.E.2d at 790.
We find no indication, explicit or implicit, that our General Assembly intended to exclude county departments of social services from its meaning of the word "state" as used generally in the UCCJEA, and specifically in N.C. Gen.Stat. § 50A-312(b). Pursuant to North Carolina's juvenile code, the director of the department of social services in each county of the State is mandated by law to establish protective services for juveniles alleged to be abused, neglected, or dependent, investigate such allegations, and if warranted, file petitions with the court seeking adjudication of such juveniles as abused, neglected, or dependent. See N.C. Gen.Stat. §§ 7B-300 et seq. (2003). Where it is found that a juvenile is abused, neglected, or dependent, or there is reasonable grounds to believe such, the department of social services in each county of the State is vested with the authority to assume custody and control over such affected juveniles. N.C. Gen.Stat. §§ 7B-500 et seq. (2003). Thus, any party seeking to enforce a child custody determination pursuant to G.S. § 50A-308 against the State of North Carolina will necessarily be dealing with a specific county department of social services within the state. Accordingly, it would be illogical to assume that the legislature did not intend to include such agencies within its meaning of the term "state." This intent is further implied in the official comment to G.S. § 50A-312, which states the following:
Subsection (b) was added to ensure that this section would not apply to the State unless otherwise authorized. The language is taken from UIFSA [Uniform Interstate Family Support Act] § 313 (court may assess costs against obligee or support enforcement agency only if allowed by local law).
N.C. Gen.Stat. § 50A-312 (Official Comment) (2003) (emphasis added). Our conclusion is also consistent with the underlying purpose of the UCCJEA, which is "to prevent parents from forum shopping their child custody disputes and assure that these disputes are *871 litigated in the state with which the child and the child's family have the closest connection." In re Van Kooten, 126 N.C.App. 764, 768, 487 S.E.2d 160, 162 (1997)(referring to the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act).
Since N.C. Gen.Stat. § 50A-312(b) prohibits an award of expenses against the Orange County DSS, we need not consider respondent-father's other assignments of error relating to the trial court's order denying his motion in this case. The order denying respondent-father's motion for reimbursement of costs and expenses is affirmed.
Affirmed.
Judges HUNTER and THORNBURG concur.