DILLON, Judge.
Plaintiff John Wesley Palmer commenced this custody action against Defendant Kayla Cline over a child born to them while they resided in West Virginia. The issue of custody is also the subject of a separate action commenced by Ms. Cline in West Virginia. Mr. Palmer appeals an order staying this North Carolina child-custody proceeding. After careful consideration, we affirm.
I. Background
In 2014, a child was born to Mr. Palmer and Ms. Cline while they all resided in West Virginia.
In early 2016, Mr. Palmer moved by himself to North Carolina.
In October 2016, Mr. Palmer commenced this action, seeking custody of the child. Before Ms. Cline was served with the complaint in this action, the trial court entered an emergency order (the "NC Emergency Order"), pursuant to N.C. Gen. Stat. § 50A-204, setting temporary joint physical custody between the parties.
In April 2017, Ms. Cline commenced a separate action in West Virginia, also seeking custody of the child. In June 2017, after a hearing on the matter, the West Virginia trial court entered an order (the "WV Custody Order") "establish[ing] and find[ing] that the proper exclusive jurisdiction for this matter rests with the State of West Virginia[.]" With the WV Custody Order in hand, Ms. Cline moved that this present North Carolina action be dismissed.
In March 2018, after a hearing on Ms. Cline's motion, the North Carolina trial court entered an order (the "NC Stay Order") staying the North Carolina matter, concluding that since the West Virginia court adjudged that it had jurisdiction to determine custody, the North Carolina court "must yield exercise of [any further] jurisdiction pending resolution of the question of the final custody order entered in West Virginia[.]"
Mr. Palmer timely appealed the NC Stay Order and filed a brief with our Court; however, Ms. Cline has not done so.
II. Analysis
On appeal, Mr. Palmer argues that the trial court erred in staying this North Carolina action. For the following reasons, we affirm and modify the trial court's NC Stay Order.
Child-custody disputes in North Carolina are subject to the provisions of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA). N.C. Gen. Stat. § 50A-101 (2016). The UCCJEA "provides a uniform set of jurisdictional rules and guidelines for the national enforcement of child custody orders." In re Q.V. , 164 N.C. App. 737, 739, 596 S.E.2d 867, 869 (2004). The UCCJEA has likewise been adopted in West Virginia. See W. Va. Code § 48-20-101 (2016).
The UCCJEA establishes a hierarchy among states to determine which state has priority in exercising jurisdiction over child-custody disputes, as follows:
At the top of the hierarchy is the child's "home state." That is, the child's "home state" generally has paramount authority to make custody determinations. See N.C. Gen. Stat. § 50A-201(a)(1) (2016). A state becomes a child's "home state" only if the child has lived there "for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen. Stat. § 50A-102(7) (2016). Thus, it is possible for a child not to have a "home state," where the child has lived in different states during the preceding six months. See id.
If the child has no "home state," or if the "home state" declines to exercise jurisdiction, a state can exercise jurisdiction to make child-custody determinations if (1) the child and at least one parent have a "significant connection" with the state and (2) there is substantial evidence in the state concerning the child's care, protection, training, and personal relationships. See N.C. Gen. Stat. § 50A-201(a)(2) (2016).
A state which is not a "home state" or a "significant connection state" may, nonetheless, exercise jurisdiction to make custody determinations if all states qualifying as "home states" or "significant connection states" have declined to exercise jurisdiction and if the state is a more convenient forum. See N.C. Gen. Stat. § 50A-201(a)(3) (2016).
Finally, a state may exercise jurisdiction to make custody determinations if there are no states which qualify under any of the above three criteria. See N.C. Gen. Stat. § 50A-201(a)(4) (2016).
Where a court in a state has properly exercised jurisdiction to make a custody determination, that court retains continuing jurisdiction generally so long as the child or one of the parents continues to reside in that state. See N.C. Gen. Stat. § 50A-202 (2016).
Notwithstanding the above hierarchy of states entitled to make custody determinations, any state where a child is physically present may exercise jurisdiction to make a temporary custody order regarding that child in certain emergency situations. See N.C. Gen. Stat. § 50A-204 (2016).
Here, Mr. Palmer appeals an order entered in this North Carolina action which stays all further proceedings based on the trial court's conclusion that West Virginia exercised jurisdiction to make custody determinations concerning the child. There are three orders relevant to the issues raised in this appeal: (1) the NC Emergency Order entered in October 2016; (2) the WV Custody Order entered in June 2017; and (3) the NC Stay Order entered in March 2018, which is the subject of this appeal.
We conclude that the NC Stay Order was proper if the West Virginia court was authorized to exercise its jurisdiction to make a custody determination. For the following reasons, we conclude that the West Virginia court was authorized to exercise its jurisdiction.
The NC Emergency Order entered in this action did not prevent the West Virginia court from acting. That is, the West Virginia court would have had no jurisdiction to make a custody determination if North Carolina had already properly exercised jurisdiction to make a custody determination other than a temporary emergency order. See N.C. Gen. Stat. § 50A-202 (2016) (providing that a state which has exercised jurisdiction, other than jurisdiction to enter a temporary emergency order, retains jurisdiction). But here, no order was ever entered in this North Carolina action which determined that North Carolina was the child's "home state" or otherwise had jurisdiction to make custody determinations, other than a temporary emergency determination.
Since North Carolina had not exercised jurisdiction to make a custody determination, the West Virginia court had the authority to consider the matter. The West Virginia court determined that it did have jurisdiction to make a custody determination, essentially concluding that West Virginia was the child's "home state" based on its finding that the child had been living in West Virginia for more than six consecutive months preceding the filing of the West Virginia action.
Mr. Palmer argues that the West Virginia court incorrectly determined it to be the child's "home state" in light of the NC Emergency Order, which suggested that the child had no home state. That is, the NC Emergency Order provided that the child would alternate living with Mr. Palmer in North Carolina and with Ms. Cline in West Virginia, trading off every two weeks. But, assuming arguendo that Mr. Palmer makes a valid argument, we conclude that West Virginia still properly exercised jurisdiction. Specifically, where a child has no "home state," next in the hierarchy is the state where the child and at least one parent have a "significant connection" and where there is substantial evidence in the state concerning the child's care, protection, training, and personal relationships. See N.C. Gen. Stat. § 50A-201(a)(2) (2017). And here, the West Virginia court determined that West Virginia met these criteria: the child was born in West Virginia and lived most of her life in the same location with Ms. Cline in West Virginia, and the child's doctor is in West Virginia. There are no findings or conclusions that North Carolina is the child's "home state" or that the child has any "significant connection" with North Carolina. Therefore, even if the West Virginia court erred in concluding that West Virginia was the child's "home state," West Virginia still had authority under the UCCJEA to exercise jurisdiction as the child's "significant connection state."
Nothing in our analysis runs afoul with N.C. Gen. Stat. § 50A-206, which addresses situations where there are simultaneous proceedings in different states. Subsection (a) provides that a state may not exercise jurisdiction if an action has been filed in another state which could exercise jurisdiction . N.C. Gen. Stat. § 50A-206(a) (2017). But even though this North Carolina action was filed first, West Virginia was still free to act as there is nothing in the record to indicate that North Carolina had jurisdiction to consider the child's permanent custody arrangement.
We conclude that the trial court not only should have stayed this action, but also should have dismissed the proceeding. Specifically, N.C. Gen. Stat. § 50A-206(b) provides that if a North Carolina court determines that another state has properly exercised jurisdiction to determine custody, then the North Carolina court must stay the North Carolina proceeding and communicate with the court in the other state. N.C. Gen. Stat. § 50A-206(b) (2018). This statute further provides that if the North Carolina court has determined that the other state, which is properly exercising jurisdiction, has "not determine[d] that [North Carolina] is a more appropriate forum, the [North Carolina] court shall dismiss the proceeding." Id. Here, the record shows that the North Carolina court has communicated with the West Virginia court and that West Virginia has determined that West Virginia is the most convenient forum. Therefore, we modify the trial court's order by ordering that this matter be dismissed.
III. Conclusion
The North Carolina court acted properly by not exercising jurisdiction to make a custody determination, as the West Virginia court had already properly exercised such jurisdiction. While the trial court has stayed this matter, we conclude that it is more appropriate that the matter be dismissed. Therefore, we modify the NC Stay Order and order that this matter be dismissed.
AFFIRMED, AS MODIFIED.
Report per Rule 30(e).
Judges BRYANT and ARROWOOD concur.