IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-929

Filed: 19 May 2020

Union County, No. 19 CVD 656

MAMOUN ALI MOHAMMAD HAMDAN, Petitioner,

v.

NAFISEH ALI ASAD FREITEKH, Respondent.

Appeal by respondent from orders entered 11 March 2019, 21 June 2019, 13 August 2019, and 30 August 2019 by Judge Stephen V. Higdon in Union County District Court. Heard in the Court of Appeals 5 February 2020.

*Passenant & Shearin Law, by Brione B. Pattison, and Miles & Stockbridge P.C., by Kelly A. Powers, for petitioner-appellee.*

*James, McElroy & Diehl, P.A., by Preston O. Odom, III, for respondent-appellant.*

ZACHARY, Judge.

Respondent Nafiseh Ali Asad Freitekh ("Mother") and Petitioner Mamoun Ali Mohammad Hamdan ("Father") are married and have three minor children. In 2018, Mother and the children moved from the marital home in the Middle East to the United States. Father then commenced an action in North Carolina under the Uniform Child-Custody Jurisdiction and Enforcement Act seeking to enforce the provisional and final child-custody determinations issued by the Shar'ia Court of Jerusalem. Over the course of several months, the trial court issued numerous orders

in favor of Father. Mother now appeals those orders. After careful review, we vacate the orders for lack of subject-matter jurisdiction.

**Background**[1]

The parties married in 2005, and three children were born to the marriage. Both parties acknowledge that Father did not reside with the rest of the family for much of the children's lives, although the reason is disputed. Father maintains that, "due to [his] political involvement in Israeli-Palestinian matters . . . the Israeli government banned [him] from entering the country." Accordingly, he lived in Ramallah, Palestine, fifteen minutes away from Mother and the children in Jerusalem, Israel. Mother, however, claims that she and the children also lived in Ramallah, Palestine, and that "[f]or much of the children's lives, [she] did not know where [Father] was living[.]" According to Mother, "Father is often incarcerated or a fugitive[.]"

On 17 September 2018, Father called Mother in the morning, as was the parties' daily custom. But when Father called again after school let out a few hours later, Mother's phone was turned off. He continued to call over "the next several" days, never successfully reaching her.

---

[1] The record and briefs make clear that the underlying facts of this case are disputed, with the parties intensely disagreeing on their marital circumstances prior to Mother's decision to move to the United States.

Father then learned that Mother intended to take the children to the United States. Father filed an action with the Shar'ia Court of Jerusalem seeking to prevent Mother from leaving the country with the children without obtaining Father's consent.[2] On 2 October 2018, the Shar'ia Court entered an order "prohibiting the children from leaving Israel" and finding that "Mother did not have the right to leave [Israel] with the children without Father's consent." By that time, however, Mother had already left the country.

Father subsequently returned to the Shar'ia Court for a determination as to the custody of the children. On 29 November 2018, the Shar'ia Court entered its provisional order, pursuant to the terms of which "the children would live with [Mother] in Israel during the week and would stay overnight with [Father] in Palestine every weekend," adopting what Father stated was "the family's previously agreed-upon arrangements." In accordance with Israeli law, the Shar'ia Court ordered that notice of the provisional custody order be served on Mother at her last known address in Jerusalem, as well as by publication in the official newspaper. The notice provided that Mother would have "an opportunity to be heard on any timely objections to the terms of the provisional custody order becoming a final custody order." Because Mother never objected or appeared in court, the Shar'ia Court entered its final order on 10 February 2019. The parties refer to the provisional child-

---

[2] The Shar'ia Court resolves private disputes among Muslims.

custody determination and the final child-custody determination collectively as the "Child Custody Order."

Father eventually located Mother in North Carolina. On 11 March 2019, he petitioned the Union County District Court, pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"), to (1) "register and enforce on an expedited basis the . . . certified child[-]custody determination" of the Shar'ia Court; (2) "enter an emergency *ex parte* order to take physical custody of the passports of [Mother] and minor children during the pendency of these proceedings"; and (3) "hold a hearing on [Father's] enforcement request on the first available day on the [c]ourt's calendar after the time for [Mother's] response to this Verified Petition has expired[.]" The same day that the petition was filed, the trial court ordered, *inter alia*, that Mother (1) was prohibited from removing the children from the jurisdiction of the court, (2) appear on 3 April 2019 "for an expedited hearing on the merits of [Father's] Verified Petition if [she] declines to participate in a voluntary return of the children to Israel before that date[,]" and (3) "surrender any and all passports and other travel documents in her possession[.]"

In her response to Father's petition, Mother admitted that she had moved to the United States with the children on 18 September 2018. She emphasized, however, that she "fled with the children to North Carolina . . . in order to escape the physical, verbal, and emotional abuse" by Father, as well as her fear that Father was

a member of "a radical Islamic group[,]" from whom the children were increasingly exposed to "extremist ideology[.]"  Additionally, she noted that while she has an Israeli identification card, she is not an Israeli citizen, and that she had been living with the children in Ramallah, Palestine.

A hearing on the matter was held in Union County District Court on 28 May 2019, the Honorable Stephen V. Higdon presiding.  On 21 June 2019, the trial court entered an order finding that the Shar'ia Court had jurisdiction under the UCCJEA to enter the Child Custody Order, and that Mother was provided with adequate notice and opportunity to be heard on the matter in the Shar'ia Court.  The trial court granted Father's petition for UCCJEA registration of the Shar'ia Court's child-custody determination, and confirmed that it was registered in accordance with the UCCJEA.

Two weeks later, Father filed a "motion for enforcement of UCCJEA confirmed child[-]custody determination[.]"  On 13 August 2019, the trial court granted the motion, ordering that Mother "return the minor children . . . to the jurisdiction of the Shar'ia Court . . . by 31 August[ ] 2019."  The trial court instructed Mother to notify Father's counsel whether she would be returning with the children by 16 August 2019.  When Mother failed to do so, Father's counsel filed notice of "noncompliance with UCCJEA order[.]"

On 22 August 2019, Mother filed notice of appeal to this Court from (1) "the UCCJEA order enforcing [the] confirmed child[-]custody determination"; (2) "the UCCJEA order confirming registration and enforcing the child[-]custody determination"; and (3) "the UCCJEA order regarding [the children's] passports, travel documents and scheduling [the] expedited enforcement hearing[.]"

On 23 August 2019, Father filed a motion with "proposed alternative travel arrangements" in light of Mother's failure to comply with the trial court's enforcement order. By order entered 30 August 2019, the trial court approved of the alternative travel arrangements. On 4 September 2019, Mother again filed notice of appeal to this Court, appealing the same orders listed in her 22 August 2019 notice of appeal, and adding the UCCJEA order approving of the alternative travel arrangements.

**Discussion**

Mother contends that (1) the trial court lacked subject-matter jurisdiction to register and enforce the Shar'ia Court's "default custody order"; (2) the trial court erred by registering and enforcing the "default custody order"; and (3) both the enforcement order and travel-approval order are void or otherwise unenforceable. The jurisdictional issue is dispositive.

## I. The UCCJEA

The UCCJEA provides a uniform set of jurisdictional rules and guidelines for the national and international enforcement of child-custody orders. *See Creighton v.*

*Lazell-Frankel*, 178 N.C. App. 227, 230, 630 S.E.2d 738, 740 (2006); N.C. Gen. Stat. § 50A-105 (2019). The Act aims "to prevent parents from forum shopping their child[-]custody disputes and assure that these disputes are litigated in the state with which the child and the child's family have the closest connection." *In re Q.V.*, 164 N.C. App. 737, 742, 596 S.E.2d 867, 870-71 (citation omitted), *cert. denied*, 358 N.C. 732, 601 S.E.2d 859 (2004).

As adopted by the North Carolina General Assembly, the UCCJEA provides broad definitions of a "child-custody determination" and a "child-custody proceeding." *See generally* N.C. Gen. Stat. § 50A-102(3) & (4). A "child-custody determination" is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." *Id.* § 50A-102(3); *see also id.* cmt. (noting that a child-custody determination under the UCCJEA "encompasses *any* judgment, decree or other order which provides for the custody of, or visitation with, a child" (emphasis added)).

Part 2 of the UCCJEA addresses jurisdiction. Section 50A-201 addresses the issue of whether North Carolina courts have jurisdiction over initial child-custody determinations. *Id.* § 50A-201. If there exists a home state—"the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding"—then that state may make an initial child-custody determination. *Id.* §§ 50A-102(7) and -

201(a). The home state retains "exclusive, continuing jurisdiction over the determination" until either (1) there is no longer a significant relationship between any of the parties and the state, and there is no longer any substantial evidence available in the state "concerning the child's care, protection, training, and personal relationships," or (2) none of the parties reside in the state. *Id.* § 50A-202(a)(1)-(2). "[A] trial court must comply with [these] provisions [of the UCCJEA] to obtain jurisdiction in such cases." *In re S.E., S.A., J.A., & V.W.*, ___ N.C. ___, ___, 838 S.E.2d 328, 331 (2020) (citations omitted).

Once jurisdiction has been established, Part 3 of the UCCJEA governs the enforcement of a child-custody determination. "[A] custody determination of another State will be enforced in the same manner as a custody determination made by a court of this State." N.C. Gen. Stat. § 50A-303 cmt.; *see id.* § 50A-303(a) ("A court of this State shall recognize and enforce a child-custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this Article or the determination was made under factual circumstances meeting the jurisdictional standards of this Article, and the determination has not been modified in accordance with this Article.").

Pursuant to section 50A-305, the out-of-state child-custody determination may be registered for enforcement by sending the following materials to the appropriate North Carolina court:

(1)  A letter or other document requesting registration;

(2) Two copies, including one certified copy, of the determination sought to be registered, and a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified; and

(3) Except as otherwise provided in [N.C. Gen. Stat. §] 50A-209, the name and address of the person seeking registration and any parent or person acting as a parent who has been awarded custody or visitation in the child-custody determination sought to be registered.

*Id.* § 50A-305(a).  The custody determination may "be registered without an accompanying request for enforcement." *Id.* cmt.

The UCCJEA also provides an expedited method for enforcement of a child-custody determination, "the normal remedy that will be used in interstate cases . . . based on habeas corpus." *Id.* § 50A-308 cmt.  Where the petitioner seeks an expedited enforcement of the child-custody determination, the petition "must be verified," and "[c]ertified copies of all orders sought to be enforced and of any order confirming registration must be attached to the petition." *Id.* § 50A-308(a).  The official comment to this section explains the purpose of these specifications:

> The petition is intended to provide the court with as much information as possible.  Attaching certified copies of all orders sought to be enforced allows the court to have the necessary information.  Most of the information relates to the permissible scope of the court's inquiry.  The petitioner has the responsibility to inform the court of all proceedings that would affect the current enforcement action.

*Id.* § 50A-308 cmt.

The provisions of the UCCJEA apply internationally, as well as between states. North Carolina courts "treat a foreign country as if it were a state of the United States for the purpose of applying" general provisions and jurisdictional evaluations, unless "the child-custody law of a foreign country violates fundamental principles of human rights." *Id.* § 50A-105(a) & (c). Child-custody determinations issued by a court of "a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this Article must be recognized and enforced under Part 3." *Id.* § 50A-105(b). If the foreign country's child-custody law "violates basic principles relating to the protection of human rights and fundamental freedoms[,]" the trial court "may refuse to apply this Act." *Id.* § 50A-105 cmt.

## II. Standard of Review

"Whether the trial court has jurisdiction under the UCCJEA is a question of law" reviewed de novo. *In re J.H.*, 244 N.C. App. 255, 260, 780 S.E.2d 228, 233 (2015) (citations omitted). Under this standard of review, an appellate court "considers the matter anew and freely substitutes its own judgment for that of the trial court." *In re T.N.G.*, 244 N.C. App. 398, 402, 781 S.E.2d 93, 97 (2015) (citations omitted). "[S]ubject-matter jurisdiction may be challenged *at any stage of the proceedings*[.]" *In re J.H.*, 244 N.C. App. at 259, 780 S.E.2d at 233 (citation omitted).

## III. Analysis

Mother asserts that the trial court lacked subject-matter jurisdiction to enter any orders in this case, because Father failed to include certified copies of the Shar'ia Court's provisional and final child-custody determinations with his petition, as required by N.C. Gen. Stat. §§ 50A-305(a)(2) and -308(a). We agree.

"Subject-matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it." *In re K.U.-S.G.*, 208 N.C. App. 128, 131, 702 S.E.2d 103, 105 (2010) (citation and internal quotation marks omitted). It follows that an inquiry into a court's subject-matter jurisdiction will precede an analysis of the underlying merits. *See Cody v. Hovey*, 219 N.C. 369, 376, 14 S.E.2d 30, 34 (1941) (noting the trial court's duty "to consider and determine the facts affecting the jurisdiction of the court before proceeding to render final judgment"); *In re J.H.*, 244 N.C. App. at 259, 780 S.E.2d at 233 ("It is axiomatic that a trial court must have subject[-]matter jurisdiction over a case to act in that case." (citation omitted)). "[T]he jurisdictional requirements of the UCCJEA must be met for a court to have power to adjudicate child[-]custody disputes." *Foley v. Foley*, 156 N.C. App. 409, 411, 576 S.E.2d 383, 385 (2003) (citation omitted).

The UCCJEA does not define the term "certified copy." Thus, in the absence of a definition, we consider the term's ordinary meaning. *See Transp. Serv. v. Cty of Robeson*, 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973) ("Unless the contrary appears, it is presumed that the Legislature intended the words of the statute to be given the

meaning which they had in ordinary speech at the time the statute was enacted." (citations omitted)). "A 'certified copy' is ordinarily defined as '[a] copy of a document or record, signed and certified as a *true copy* by the officer to whose custody the original is [e]ntrusted.' " *State v. Gant*, 153 N.C. App. 136, 143, 568 S.E.2d 909, 913 (citation omitted), *disc. review denied*, 356 N.C. 440, 572 S.E.2d 792 (2002); *see also Certified Copy*, Black's Law Dictionary 410 (10th ed. 2014) (defining a "certified copy" as "[a] duplicate of an original (usu[ally] official) document, certified as an exact reproduction usu[ally] by the officer responsible for issuing or keeping the original").

Here, two copies of the provisional child-custody determination issued by the Shar'ia Court on 29 November 2018 were included in Father's petition for registration, one in English and one in Arabic; however, there is nothing to evidence that either of these are certified copies of the original provisional child-custody determination. Although there is a notarized certification that the English translation (from Arabic) was accurate, neither the English translation nor the certification that the English translation was accurate indicate that Father included a certified copy of the provisional child-custody determination with his petition.

A copy of the Shar'ia Court's final child-custody determination was also included with Father's petition. However, Father failed to provide the requisite English translation of the final child-custody determination issued by the Shar'ia Court on 13 February 2019. *See* N.C. Gen. Stat. § 52C-7-713 ("A record filed with a

tribunal of this State under this Article must be in the original language and, if not in English, must be accompanied by an English translation."). Moreover, there is no indication that the untranslated document purporting to be a copy of the final child-custody determination is certified to be an exact reproduction of the Shar'ia Court's original final child-custody determination.

Father asserts that the stamp on the copies of provisional and final child-custody determinations reading "Jerusalem Shar'ia Court" is evidence that these documents are certified true copies of the original provisional and final child-custody determinations. However, this stamp is not sufficient to render either document a certified copy of the Shar'ia Court's child-custody determination. It does not state that the documents are certified true copies, or otherwise indicate that the documents are certified to be duplicates of the original official documents. Thus, there is no indication that Father's petition included a certified copy of either the provisional child-custody determination or the final child-custody determination.

In addition, Father emphasizes that he provided "a statement under penalty of perjury that to the best of [his] knowledge and belief . . . the order has not been modified[.]" N.C. Gen. Stat. § 50A-305(a)(2). But this is just one requirement set forth in that provision. The full subsection explicitly requires that the petition include "[t]wo copies, including one certified copy, of the determination sought to be registered, *and* a statement under penalty of perjury that to the best of the knowledge

and belief of the person seeking registration the order has not been modified"—not one or the other, but both. *Id.* (emphasis added).

Moreover, Father contends that "the lower court confirmed on the record in open court that the original certified copies are indeed contained in the court file." This statement mischaracterizes the transcript. At the hearing, Father's attorney stated, "And, Your Honor, in compliance with the UCCJEA registration provisions, the original certified copy of this Order is in the court file[,]" to which the trial court responded, "Okay." Later, Father's attorney stated that "the original certified [copies of the final child-custody determination] are in the court file[,]" to which the trial court did not respond. Neither statement constitutes confirmation of certification on the record in open court. Regardless, the absence in the record on appeal of proof that either the provisional or final child-custody determinations were certified compels the conclusion that there were no certified copies of the Shar'ia Court's child-custody determinations in the court file.

We also reject Father's position that Mother has waived any argument related to certification because she failed to raise the issue at trial. This contention—made for the first time at oral argument—would have us conclude that the production of a certified copy is the equivalent of *authentication*, and that the failure to object before the trial court waives appellate review. This argument lacks merit. One of the primary purposes of the UCCJEA is to "[a]void jurisdictional competition and conflict

. . . in matters of child custody[.]" *Id.* § 50A-101 cmt.; *see also Foley*, 156 N.C. App. at 411, 576 S.E.2d at 385. A party's failure to provide a certified copy of a foreign child-custody order will necessarily affect whether a North Carolina court has jurisdiction, which cannot be waived. As our Supreme Court has regularly observed, "a court's lack of subject[-]matter jurisdiction is not waivable and can be raised at any time." *In re S.E.*, ___ N.C. at ___, 838 S.E.2d at 331 (citation omitted).

We reiterate that "the jurisdictional requirements of the UCCJEA must be met for a court to have power to adjudicate child[-]custody disputes." *Foley*, 156 N.C. App. at 411, 576 S.E.2d at 385 (citation omitted). The failure to submit certified copies of the orders Father wished to have enforced in North Carolina pursuant to the UCCJEA—which requires, *inter alia*, that "[c]ertified copies of all orders sought to be enforced and of any order confirming registration must be attached to the petition"—strips the trial court of subject-matter jurisdiction to hear the matter. N.C. Gen. Stat. § 50A-308(a). Thus, the trial court could not enforce the Shar'ia Court's child-custody determinations.

Because we conclude that Father did not properly invoke the subject-matter jurisdiction of the trial court, we need not address Mother's remaining arguments on appeal.

**Conclusion**

For the reasons stated herein, the trial court's orders are void. *See Carter v. Rountree*, 109 N.C. 29, 32, 13 S.E. 716, 717 (1891) ("A void [order] is one that has merely semblance, without some essential element or elements, as when the court purporting to render it has not jurisdiction."). "[L]ike any other void judgment[s]," these orders are nullities, *Cunningham v. Brigman*, 263 N.C. 208, 211, 139 S.E.2d 353, 355 (1964), and "[e]*x nihilo nihil fit* is one maxim that admits of no exceptions[,]" *Harrell v. Welstead*, 206 N.C. 817, 819, 175 S.E. 283, 285 (1934). Accordingly, we vacate the order confirming registration of the petition, as well as the order enforcing the Shar'ia Court's custody determinations.

VACATED.

Chief Judge McGEE and Judge ARROWOOD concur.